**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MAMADOU NDIAYE<br><br>Petitioner,<br><br>vs.<br><br>WARDEN DENNIS SULLIVAN, *et al.*,<br><br>Respondents. | CASE NO. 3:26-CV-01938-JRK<br><br>JUDGE JAMES R. KNEPP, II<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

On August 17, 2026, Petitioner Mamadou Ndiaye filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus. (ECF #1). He asserts his continued detention in Immigration and Customs Enforcement (ICE) custody pending removal is unlawful and requests his release or removal from the United States. (*Id.* at PageID 11-12). On August 20, 2026, this case was referred to me under Local Civil Rule 72.2 for preparation of a Report and Recommendation. (Non-document entry dated Aug. 20, 2026). On August 21, 2026, I directed Respondents to show cause why the writ should not be granted. (ECF #5).

On August 28, 2026, Respondents filed a Return of Writ. (ECF #6). On September 3, 2026, Mr. Ndiaye replied. (ECF #7). This matter is now decisional. As detailed below, I recommend the District Court **DISMISS** the petition **WITHOUT PREJUDICE** to Mr. Ndiaye's ability to refile should he remain in post-removal-period custody longer than six months.

## Background

Mr. Ndiaye is a native and citizen of Senegal. (ECF #1 at PageID 4; ECF #6-2 at PageID 77). He entered the United States around November 11, 2023 in California. (ECF #1 at PageID 4; ECF #6-2 at PageID 77). On that day, Mr. Ndiaye was issued a notice to appear that alleged he was removable as an immigrant without being admitted or paroled after inspection by an immigration officer. (ECF #6-2 at PageID 77). Mr. Ndiaye was paroled into the United States pending removal proceedings. (ECF #6-5 at PageID 88).

On December 17, 2025, ICE detained Mr. Ndiaye pending resolution of his removal proceedings. (ECF #1 at PageID 4; ECF #6-5 at PageID 88). On January 20, 2026, the immigration judge orally decided Mr. Ndiaye's case but docketed a blank order. (*See* ECF #1 at PageID 1, 3; ECF #6-4 at PageID 83, 85). On March 6, 2026, the immigration judge ordered Mr. Ndiaye removed to Uganda. (ECF #6-1 at PageID 73, 75). The order became administratively final on April 7, 2026, after Mr. Ndiaye's time to appeal the decision to the Board of Immigration Appeals lapsed. (ECF #1 at PageID 1-2; ECF #6-1 at PageID 76; ECF #6-5 at PageID 89).

Mr. Ndiaye requested a post-order custody review on June 16, 2026, six months into his detention. (ECF #1-1 at PageID 16). On July 6, ICE decided to continue detention for 90 days because it found Mr. Ndiaye to be a flight risk and because ICE expected removal to occur in the reasonably foreseeable future. (ECF #1-2 at PageID 44-46). As of the issuance of this Report and Recommendation, that 90-day extension has not yet lapsed.

An officer of ICE's Enforcement and Removal Operations (ERO) submitted an affidavit describing the steps taken within ICE to effectuate Mr. Ndiaye's removal. (ECF #6-5). On April 11, 2026, ERO "submitted" Mr. Ndiaye to a "point of contact for submission for a charter flight." (ECF #6-5 at PageID 89). Respondents do not identify this point of contact or state if the point of contact is within ICE or the United States government or is a private contractor for charter flights. (*See id.*; *see also* ECF #6 at PageID 70-71). On April 21, the point of contact replied that flights to Uganda had been canceled due to an outbreak of Ebola. (ECF #6-5 at PageID 89). The point of contact also advised ERO Detroit "that the case was being tracked by the Removal and International Operations (RIO) Detention Deportation Officer." (*Id.*). Respondents do not further identify that officer, nor did that officer submit an affidavit directly to the Court. (*See id.*; *see also* ECF #6 at PageID 70-71). On August 26, ERO Detroit emailed both the unidentified point of contact and the RIO Detention Deportation Officer "for an update regarding removal on a charter flight to Uganda." (*Id.*). The email was sent the same day the affidavit was executed and two days prior to Respondents' filing of the Return of Writ. (*See id.*). Respondents have not indicated whether they have received a response.

## LAW AND ANALYSIS

Mr. Ndiaye argues he has been subject to "unlawful post-removal-order immigration detention maintained under the authority of 8 U.S.C. § 1231(a)(6)." (ECF #1 at PageID 1). He

requests release from ICE custody under reasonable conditions of supervision. (*Id.* at PageID 11). Respondents argue Mr. Ndiaye is lawfully detained because he is subject to a final order of removal and his detention has been extended beyond 90 days because he is inadmissible under 8 U.S.C. § 1182. (ECF #6 at PageID 68).

Under 28 U.S.C. § 2241, the district court may review the constitutionality and statutory basis of executive detention. *Rosales-Garcia v. Holland*, 322 F.3d 386, 394 (6th Cir. 2003). Habeas actions under § 2241 "remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." This 90-day period is often called the "removal period." "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Under 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed who is inadmissible under [8 U.S.C. § 1182] . . . may be detained beyond the removal period."

While § 1231(a)(6) does not state how long the government may extend detention beyond the 90-day removal period, the Supreme Court has held the government cannot detain a person "indefinitely" under that section. *See Zadvydas*, 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute . . . in light of the Constitution's demands" that "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. Detention of an alien subject to a final order of removal for up to six months is presumptively reasonable given the time needed to accomplish the removal. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

The relevant date for 8 U.S.C. § 1231 and *Zadvydas* is the date Mr. Ndiaye was subject to an administratively final order of removal. Mr. Ndiaye's order of removal to Uganda became administratively final on April 7, 2026, after Mr. Ndiaye's time to appeal the decision to the Board of Immigration Appeals lapsed. (ECF #1 at PageID 1-2; ECF #6-1 at PageID 73-76; ECF #6-5 at PageID 89). Although Mr. Ndiaye was first taken into ICE custody on December 17, 2025, his detention until April 7, 2026 was pending a final removal decision and authorized under 8 U.S.C. § 1226(a). Mr. Ndiaye does not challenge that authority and the Supreme Court has found that

authority constitutional. *See Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing "detention during deportation proceedings as a constitutionally valid aspect of the deportation process."). Thus, for the purposes of Mr. Ndiaye's *Zadvydas* claim, his detention subject to an administratively final order of removal started on April 7, 2026.

Starting April 7, 2026, Mr. Ndiaye was held in custody under the "removal period" under 8 U.S.C. § 1231(a), which authorizes detention during the 90-day period to remove Mr. Ndiaye from the United States. Once the authority to detain Mr. Ndiaye lapsed on July 6, 2026, ICE issued the decision to continue detention beyond the 90-day removal period. (ECF #1-2 at PageID 44-46). At that point, Mr. Ndiaye was in post-removal-period detention and subject to the constitutional limits in *Zadvydas*. *See* 533 U.S. at 689 (noting the Constitution "limits an alien's *post-removal-period detention* to a period reasonably necessary to bring about the alien's removal from the United States.") (emphasis added). Mr. Ndiaye filed his petition on August 28, 2026. (ECF #1). At that point he was in post-removal-period detention for 53 days. Thus, while Mr. Ndiaye has been in ICE custody for longer than six months, he has not been in post-removal-period detention for at least six months. Consequently, his detention under 8 U.S.C. § 1231(a)(6) is presumptively reasonable and any challenge to his continued detention under that authority "is therefore not ripe for review." *See Kumar v. U.S. Dep't of Homeland Sec.*, No. 19-2404, 2020 WL 2904685, at *1 (6th Cir. June 1, 2020).

Mr. Ndiaye may re-file his petition once the six-month detention period expires. *See Man Lung Lo v. United States AG*, No. 1:15-cv-675, 2016 U.S. Dist. LEXIS 68077, at *2 (N.D. Ohio May 24, 2016) (dismissing petition without prejudice where petitioner had not been detained for at least six months). If he does so, he must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to Uganda or elsewhere. *See Zadvydas*, 533 U.S. at 701. Mr. Ndiaye must allege facts suggesting his detention will be "indefinite" and "potentially permanent." *See Jiang Lu v. U.S. ICE*, 22 F.Supp.3d 839, 844 (N.D. Ohio 2014). But "[m]erely alleging that a date for travel has not yet been set, is insufficient to demonstrate indefinite detention." *Id.* at 843. And Mr. Ndiaye must provide more than "mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them." *See Manjulaben v. ICE*, No. 4:25-cv-2252, 2025 WL 2977713, at *2 (N.D. Ohio Oct. 22, 2025) (collecting cases). If Mr. Ndiaye provides good reason, then "the

Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

## CONCLUSION

I recommend the District Court **DISMISS** the petition **WITHOUT PREJUDICE** to Petitioner's re-filing at a later time should he remain in post-removal-period custody longer than six months.

Dated: September 16, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).**